Saviour Azzopardi, Plaintiff Pro Se
4551 Driftwood Ct.
Discovery Bay, CA 94514
Email: Kathy.azzopardi@gmail.com

FILED

2015 MAY 28 A 10: 54

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF CALIFORNIA**

SAVIOUR AZZOPARDI

      Plaintiff,

V.

DEUTSCHE BANK NATIONAL TRUST
COMPANY, As Trustee for the AMERICAN
HOME MORTGAGE ASSETS TRUST
2007-5, MORTGAGE BACKED PASS-
THROUGH CERTIFITES, SERIES 2007-
5; OCWEN LOAN SERVICING, LLC, As
Loan Servicer; MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC. As
Nominee; And Does 1-10, Inclusive;

      Defendants

Case No.: C15- 2370

**COMPLAINT [VERIFIED]**

**JURY TRIAL DEMANDED**

## I.    INTRODUCTION

Saviour Azzopardi, (hereinafter referred as "Plaintiff"), alleges herein as follows:

1.   Plaintiff brings this action against Defendants for damages and harm resulting from Defendants' negligent, fraudulent and unlawful conduct concerning a mortgage loan transaction and impending foreclosure action.

2.   This is an action brought for declaratory judgment, injunctive and equitable relief, and for compensatory, special, general and punitive damages.

3.     Additionally, Plaintiff brings causes of action against all defendants for Fraud, Intentional Infliction of Severe Emotional Distress, Rescission, violations of TILA, RESPA, and HOEPA, upon the facts and circumstances surrounding Plaintiff's original loan transaction, and subsequent securitization.

4.     Defendants' violations of these laws are additional reasons this Court should quiet the title in Plaintiff's property.

5.     For years, mortgage brokers and lenders have been selling loan products that they knew or should have known would never be able to be repaid by the borrower and would prevent borrowers from ever actually owning the home.

6.     Instead, borrowers were offered interest-only, negative amortization, and other subprime loan products that amounted to no more than a short term lease until the payments became so unaffordable that the borrowers are now faced with either bankruptcy or foreclosure.

7.     Plaintiff falls into this category.

8.     The housing bubble of the past decade was created by predatory lending practices, such as charging excessive fees, incorporating payment penalties, negative amortization payments, or other abusive terms in the agreements, providing kickbacks to brokers, flipping loans, using balloon payments to conceal the true burden of the financing, requiring unnecessary insurance and other products, including mandatory arbitration clauses, steering borrowers to subprime loans when they qualify for conventional loans, and using bait and switch tactics.

9.     All were rampant within the industry without oversight or good judgment and found to be inconsistent with important national objectives, including the goals of fair access to credit, community development, and stable homeownership by the broadest spectrum of America.

10.     Rather than offering a loan product that was viable and long-term for the borrower and lender, brokers and lenders greedily sold whatever they could get away with, arguably the primary catalyst for what is now this country's worst economic crisis since the Great Depression.

11.     The loan product sold to Plaintiff in this case was exactly the kind of loan that has contributed to our national problem.

12.     The Defendants were aware of this trend, and possessed the foresight to advise Plaintiff of this risk.

13.     They intentionally concealed the negative implications of the loan they were offering, and as a result, Plaintiff faces the potential of losing her home to the very entity and entities who placed her in this position.

14.     This case is on point with the decision rendered in *Glaski v. Bank of America, ET. Al (Super.Ct. No. 09CECG03601)* with respect to the securitization aspects of the case.


## II.     ALLEGATIONS AND ESTABLISHMENT OF PARTIES

15.     Plaintiff is a resident and citizen of the County of Contra Costa, State of California and the lawful owner of a parcel of Real Property, (hereinafter "Subject Property"), commonly known as: 4551 Driftwood Ct. Discovery Bay, CA 94514.

16.     The Subject Property is located in Contra Costa County, State of California.

17.     Through belief, OCWEN Loan Servicing, LLC ("OCWEN"), is and at all times herein mentioned was conducting ongoing business in the County of Contra Costa, State of California.

18.     OCWEN is a national banking association organized and existing under the laws of Florida with its principal address located at PO Box 24736 West Palm Beach, FL 33416-4736.

19.     At all relevant times, OCWEN has transacted and continues to transact business throughout the State of California, including Contra Costa County, and is claiming to be the servicer on Plaintiff's Loan.

20.     Defendant, Deutsche Bank National Trust Company ("DBNT"), is an International banking and investment association organized outside of the United States.

21.     At all relevant times, DBNT has transacted and continues to transact business throughout the State of California, including Contra Costa County.

22.     Defendant, Mortgage Electronic Registration Systems, Inc. ("MERS"), is a corporation duly organized and existing under the laws of Virginia, whose last known address is 1818 Library Street, Suite 300, Reston, Virginia 20190.

23.     At all relevant times, MERS has transacted and continues to transact business throughout the State of California, including Contra Costa County.

24.     Plaintiff is further informed and believes, and thereon alleges, that Defendant MERS is the purported Beneficiary under the Mortgage and is a participant in the imperfect securitization of the Note and the Mortgage, as more particularly described *Infra*.

25.     Plaintiff is unaware of the true names of Defendants sued as DOES 1 through 10 and therefore sues these Defendants by fictitious names as persons unknown claiming any legal or equitable right, title, estate, lien, or interest in the Subject Property described in the Complaint.

26.     Plaintiff will amend this complaint to allege their true names and capacities when ascertained.


### III.     JURISDICTION

27.     This Court has both personal and subject matter jurisdiction to hear this case pursuant to 28 USC § 1332.

28.     Plaintiff is a resident of Contra Costa County, State of California.

29.     The Defendants are business entities organized in a state or jurisdiction other than California with their respective headquarters and principal place of business located in a state or jurisdiction other than California. *See ¶¶ 15-23, supra.*

30.     The amount in controversy exceeds $75,000.00.


### IV.     VENUE

31.     Venue lies in this District pursuant to 28 USC § 1391(b).

4
Verified Complaint

32.    The Subject Property lies within the territorial limits of the County of Contra Costa, State of California.

## V.    SPECIFIC ALLEGATIONS

33.    On or about March 26, 2007, a residential loan, ("Plaintiff's Loan"), was made to Plaintiff by American Home Mortgage Acceptance, Inc.

34.    On or about March 26, 2007, Plaintiff, executed a note, ("NOTE"), promising to pay American Home Mortgage Acceptance, Inc. in monthly payments.

35.    Also on March 26, 2007, Plaintiff executed a Deed of Trust document, ("DOT"), in the amount of $948,000.00. This document was filed as document number 2007009499 in the Official Records for Contra Costa County, which identified the lender as American Home Mortgage Acceptance, Inc. and the Trustee cited was CTC Real Estate Services.

36.    MERS is named solely as a Nominee on the DOT.

37.    Through belief, and further substantiated by an independent securitization audit, Plaintiff alleges that after the loan was originated and funded it was sold almost immediately after origination, bundled into a group of Notes and subsequently sold to investors as a derivative "Mortgage Backed Security", issued by DBNT, entitled AMERICAN HOME MORTGAGE ASSETS, LLC, ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-5, ("TRUST"), and that therefore none of the Defendants own this loan, or NOTE, and cannot be and are not the Beneficiary under the DOT, or lawfully appointed Trustee under the DOT and have no right to declare a default, to cause notices of foreclosure sale to issue or to be recorded, or to foreclose on Plaintiff's interest in the Subject Property.

38.    Documents filed with the SEC by the securitization participants allegedly claim that the Note and DOT at issue in this case were sold, transferred and securitized by Defendants, with other loans and mortgages into the TRUST, which is a Common Law Trust formed pursuant to New York law.

39.     A detailed description of the mortgage loans which form the TRUST 2007-5 Trust is included in Form 424B5 ("the Prospectus"), which has been duly filed with the SEC.

40.     An expert, certified, forensic audit of the Plaintiff's loan documents reveals that Plaintiff's mortgage note was required to at least go through several key parties before it reached the REMIC trustee it was destined for.

41.     This was not followed

42.     DBNT is the current Trustee for the TRUST, as evidenced by the Assignments more particularly described *Infra*.

43.     OCWEN is the servicer of the LOAN, as evidenced by the Assignments more particularly described *Infra*.

44.     MERS is acting as a Nominee, however was never lawfully substituted into the Loan at issue.

45.     When a promissory note gets securitized, it ceases to remain a negotiable instrument and becomes a security. If Defendants attempt to characterize a loan as both a security and a negotiable instrument, it is called "double dipping," which is an SEC violation.

46.     The gravamen of this lawsuit is, 1) Defendants and the TRUST are not holders or holders in due course of the NOTE and 2) Defendants and the TRUST are not beneficiaries under the DOT. 3) Defendants have no right to declare a default and no right to attempt to consummate a foreclosure, as further described *Infra*.

47.     OCWEN, DBNT, MERS and the TRUST and their successors in interest do not fall within any of the classifications of holders in due course of the Note. The Note is not "bearer paper" and since its securitization, it is no longer a negotiable instrument.

48.      OCWEN, DBNT, MERS and the TRUST and their successors in interest have not suffered any financial loss relating to the Loan.

49.     More importantly, the certificate holders of the TRUST have not suffered any financial harm, as

follows:

a) The TRUST's Master Servicer is required to make payments to the TRUST when loan payments are not made;

b) The Master Servicer is not a party with legal or equitable interest in the DOT;

c) TRUST passes payments made by the Master Servicer through to the certificate holders;

d) These payments are received as interest and not as a loan;

e) 1009 forms issued by the Trustee to each investor, through belief, treats each advance as a payment of interest and not as a loan which must be repaid by the investor;

f) The Master Servicer's claim is not secured;

g) The requirement for the Master Servicer to make payments is a concession given by the Master Servicer as an inducement to convince the Trustee to use its service;

h) The payments were not made for the benefit of the borrower.

50.    As a Constitutional matter, at a minimum, a party is required to suffer some actual or threatened injury as a result of Defendant's conduct to successfully assert a claim.

51.    OCWEN, DBNT, MERS and the TRUST and their successors in interest have never been the real party in interest as a lender or financial institution underwriting the Loan. Defendants are strangers to the Loan.

52.    Plaintiff alleges that the only individual who has standing to foreclose is the holder of the Note because they have a beneficial interest.

53.    The only potential holders of the Note are the certificate holders of the TRUST because they are the end users and pay taxes on their interest gains; furthermore, all of the banks and Defendants in the middle were paid in full.

54.    California law provides that the power of sale can only vest in a person entitled to payments.

55.    Plaintiff alleges the Originator American Home Mortgage Acceptance, Inc., sold its interest in the Loan and was paid in full.

56.    Defendant, DBNT alleges that it is the "holder and owner" of the Note and the beneficiary of the

7
Verified Complaint

DOT.

57.     However, the Note and DOT clearly identify the Originator American Home Mortgage Acceptance, Inc. as the holder.

58.     DBNT claims that documents allegedly state that the original lender allegedly sold the mortgage loan to the TRUST, but no perfected chain of title exists between DBNT and the TRUST

59.     In the alternative, Plaintiff believes that Defendant, OCWEN, alleges that it is the "holder and owner" of the NOTE and the beneficiary of the DOT.

60.     However, documents state that American Home Mortgage Acceptance, Inc. allegedly sold the mortgage loan to the TRUST, but no perfected chain of title exists between OCWEN and the TRUST.

61.     Furthermore, the terms of the finance transaction with American Home Mortgage Acceptance, Inc. are not clear or conspicuous, nor consistent, and are illegal which violates several statutes, and in essence creates a fraudulent and unenforceable loan.

62.     Further, this loan was underwritten without proper due diligence by American Home Mortgage Acceptance, Inc.

63.     American Home Mortgage Acceptance, Inc. also used a "LIBOR Cost of Savings" as the Index for the basis of this loan– which has been disproven is several State and Federal courts as a scandal of epic proportions. Because the Lender controls this Index and it is directly based upon the average rate of interest, it was not a valid index for the basis of the loan. In addition, and unbeknownst to Plaintiff, American Home Mortgage Acceptance, Inc. illegally, deceptively and otherwise unjustly, qualified Plaintiff for a loan which American Home Mortgage Acceptance, Inc. knew or should have known that Plaintiff could not qualify for or afford by, for example, the underwriter has approved this loan based upon credit scores and the borrower's Stated Income only.

64.     Had American Home Mortgage Acceptance, Inc. used a more accurate and appropriate factor, such as Tax Forms and a more determinative level of scrutiny of determining comply with the requirement to

provide Plaintiff with a Mortgage Loan Origination Agreement the debt to income ratio, Plaintiff would not have qualified for the loan in the first place. Consequently, American Home Mortgage Acceptance, Inc. sold Plaintiff a loan product that it knew or should have known would never be able to be fully paid back by Plaintiff. American Home Mortgage Acceptance, Inc. ignored long-standing economic principals of underwriting and instead, knowingly, liberally, greedily and without any regard for Plaintiff's rights sold Plaintiff a deceptive loan product.

65.     There was no determination of the ability of the borrower to repay the loan, with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law. Additionally, Defendants, and each of them, neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product provided by Defendants.

66.     The purpose of entering into the above-described mortgage loan transactions was for Plaintiff to eventually own the Property. That purpose was knowingly and intentionally thwarted and indeed made impossible by Defendants' combined actions as alleged herein.

## VI.     CHAIN OF TITLE DOCUMENTS

**Securitization did not comply with applicable law or provisions of PSA**

67.     Plaintiff alleges the Pooling and Servicing Agreement, ("PSA"), concerning the TRUST where the loan is held states that all intervening assignments and endorsements leading up to their inclusion in the TRUST must be present.

68.     This procedure has not been followed.

69.     Plaintiff alleges that the Loan was securitized, with the Note not being properly transferred from the Originator, to the Trustee DBNT.

70.     As set forth herein above, the TRUST was formed by execution of the PSA.

9
Verified Complaint

71. The TRUST and PSA are subject to New York law.

72. Plaintiff is a third party beneficiary of the PSA.

73. Plaintiff alleges that the purchase mortgage on the Subject Property, the debt or obligation evidenced by the Note and the DOT executed by Plaintiff in favor of the original lender, was not properly assigned and transferred to Defendants operating the pooled mortgage funds or trusts in accordance with the PSA of the entities making and receiving the purported assignments to this trust.

74. Plaintiff alleges that the PSA requires that each Note or DOT has to be endorsed and assigned, respectively, to the TRUST and executed by multiple intervening parties before it reached the TRUST. Here, neither the NOTE nor the DOT was transferred, negotiated or assigned to the TRUST by the closing date. Therefore, under the PSA, any assignments of the DOT beyond the specified closing date for the TRUST are void.

75. The PSA requires that each Note or Mortgage had to be endorsed and assigned, respectively, to the TRUST and executed by multiple intervening parties before it reached the TRUST. Because the Loan was merely pledged to the TRUST, neither the Note nor the DOT was transferred, negotiated or assigned to the TRUST by the closing date. Therefore, under the PSA and applicable law, any assignment of the DOT beyond the specified closing date for the TRUST is void.

76. Plaintiff further alleges that even if the DOT had been transferred into the TRUST by the closing date, the transaction is still void as the Note would not have been transferred according to the requirements of the PSA, since the PSA requires a complete and unbroken chain of transfers and assignments to and from each intervening party.

77. Plaintiff alleges that the TRUST had no officers or directors and no continuing duties other than to hold assets and to issue the series of certificates of investment. Plaintiff also alleges that the Note was secured by the DOT.

78. Plaintiff alleges that as of the date of the filing of this Complaint, the DOT had not been legally

10
Verified Complaint

1 assigned from the Originator, American Home Mortgage Acceptance, Inc. to any of the Defendants.

2 79.    Plaintiff alleges that no documents or records have been produced that demonstrate that prior to the

3 closing date for the TRUST, the Note was duly endorsed, transferred and delivered to the TRUST, including

4 all intervening transfers. Nor have any documents or records been produced that demonstrate that prior to the

5 closing date, the DOT was duly assigned, transferred and delivered to the TRUST, including all intervening

6 assignments. Any documents that purport to transfer any interest in the Note to the TRUST after the

7 TRUST's closing date are void as a matter of law, pursuant to the applicable trust law and relevant portions

8 of the PSA.

9 80.    Plaintiff alleges that the purported assignments and transfers of the loan, debt or obligation did not

10 comply with California law, and other applicable laws and statutes, and, thus, does not constitute valid and

11 enforceable "True Sales."

12 81.    Any security interest in the Subject Property was, thus, never perfected.  The alleged holder of the

13 NOTE is not the beneficiary of the DOT.  The alleged beneficiary of the DOT does not have the requisite

14 title, perfected security interest or standing to proceed; and is not the real party in interest with regard to any

15 action taken or to be taken against the Subject Property.

16 82.    As set forth hereinabove, Defendants, or their predecessors in interest, violated the express terms of

17 the PSA which is a Trust Agreement and which, along with another document, the Mortgage Loan Purchase

18 Agreement, is the operative securitization document created by the finance and securitization industry to

19 memorialize a particular securitization transaction. The PSA specifies the rights and obligations of each party

20 to the securitization transaction to each other, and is a public document on file with the SEC.  More

21 specifically, the PSA requires strict compliance with its procedures and timelines in order for the parties to

22 achieve their specific objectives.

23 83.    Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to

24 investors by Wall Street and other firms.  The purpose is to provide a large supply of money to lenders for

11
Verified Complaint

originating loans, and to provide investments to bond holders which were expected to be relatively safe. The procedure for selling of the loans was to create a situation whereby certain tax laws known as the Real Estate Mortgage Investment Conduit (hereinafter "REMIC") Act were observed, and whereby the Issuing Entities and the Lenders would be protected from either entity going into bankruptcy. In order to achieve the desired "bankruptcy remoteness," two "True Sales" of the loans had to occur, in which loans were sold and transferred to the different parties to the securitization. A "True Sale" of the loan would be a circumstance whereby one party owned the Note and then sold it to another party. An offer would be made, accepted and compensation given to the "seller" in return for the Note.

84.     The Note would be transferred, and the DOT assigned to the buyers of the NOTE, with an Assignment made every step of the way, and, furthermore, the Note would be endorsed to the next party by the previous assignee of record.

85.     In order for the Trustee of the TRUST to have a valid and enforceable secured claim against Subject Property, the Trustee must prove and certify to all parties that, among other things required under the PSA:

a)  There was a complete and unbroken chain of endorsements and transfers of the Note from and to each party to the securitization transaction (which should be from the (A) Mortgage Originator to the (B) Sponsor to the (C) Depositor to the (D) TRUST, and that all of these endorsements and transfers were completed prior to the Trust closing dates (see discussion below); and

b)  The Trustee of the TRUST had actual physical possession of the Note at that point in time, when all endorsements and assignments had been completed.  Absent such proof, Plaintiff alleges that the TRUST cannot demonstrate that it had perfected its security interest in Subject Property that is the subject of this action.  Therefore, if the Defendants, and each of them, did not hold and possess the Note on or before the closing date of the TRUST, they are estopped and precluded from asserting any secured or unsecured claim in this case.

86.     Plaintiff alleges that pursuant to the terms of the PSA, the Originator, American Home Mortgage

Acceptance, Inc., agreed to transfer and endorse to the Trustee for the TRUST, without recourse, including all intervening transfers and assignments, all of its right, title and interest in and to the NOTE and all other mortgage loans identified in the PSA. The PSA provides that the transfers and assignments are absolute, were made for valuable consideration, to wit, in exchange for the certificates described in the PSA, and were intended by the parties to be a bona fide or "True Sale."

87.     Since, as alleged herein below, a True Sale did not actually occur, Plaintiff alleges that the Trustee for the TRUST is estopped and precluded from asserting any secured or unsecured claim in this case.

88.     Plaintiff alleges that as a result of the PSA and other documents signed under oath in relation thereto, the Originator, Sponsor and Depositor[1] are estopped from claiming any interest in the NOTE that is allegedly secured by the DOT on the Subject Property.

89.     The NOTE in this case and the other mortgage loans identified in the PSA, were never actually transferred and delivered by the Originator, American Home Mortgage Acceptance, Inc. to the Sponsor or to the Depositor or from the Depositor to the Trustee for the TRUST. Plaintiff further alleges that the PSA herein provides that the mortgages were to be delivered to the TRUST, which files include the DOT.

90.     Based upon the foregoing, Plaintiff alleges that the following deficiencies exist, in the "True Sale" and securitization process as to this DOT which renders invalid any security interest in the DOT, including, but not limited to:

   a) The splitting or separation of title, ownership and interest in the Note and DOT of which the original lender is the holder, owner and beneficiary of DOT;

   b) When the loan was sold to each intervening entity, there were no Assignments of the DOT to or from any intervening entity at the time of the sale. Therefore, "True Sales" could not and did not occur;

   c) The failure to assign and transfer the beneficial interest in the DOT to Defendants, in accordance with

---

[1] The Originator is the lender who originally funded the loan; the Sponsor "collects" or "buys" the loans from different lenders, combines them, and then "sells" them to the Depositor; the Depositor "deposits" the loans into the Issuing Entity Trusts, and then, various bonds and certificates are sold; the Issuing Entity would be the "legal owner" of the Notes, though the actual documents would be held by Custodians.

the PSA of the Defendants, as Securitization Participants;

d) The failure to endorse, assign and transfer the Note to Defendant, DBNT, as Trustee for the TRUST, in accordance with the PSA and California law;

e) No Assignments of Beneficiary or Endorsements of the Note to each of the intervening entities in the transaction ever occurred, which is conclusive proof that no True Sales occurred as required under the PSA filed with the SEC; and

f) Defendants violated the pertinent terms of the PSA.

91.    Plaintiff alleges that none of the parties to the securitization transaction, or any of the Defendants in this case, hold a perfected and secured claim in the Subject Property; and that all Defendants are estopped and precluded from asserting a secured or unsecured claim against the Subject Property.

**Assignment 1**

92.    On September 2, 2008, an Assignment of the DOT was recorded in the Official Records for Contra Costa County bearing the instrument number 20010195127, purportedly with Defendant MERS transferring Interest within the DOT to American Home Mortgage Servicing, Inc.

93.    A true and correct copy of said assignment is incorporated hereto as (RJN Exhibit A)

94.    The document was signed by Linda Green, as Vice-President for MERS, without providing disclosure of her employment in representing the Assignee, and not the Assignor.

95.    Through belief, there may be 20,000 or so temporary "deputized" officer's signing for MERS.

96.    MERS does not have standing or authority under the DOT to assign anything. MERS can only assign what it owns, which is nothing.

97.    About a year had passed by since the Note was originated and Plaintiff therefore demands immediate production of the then notarized bill of sale; note endorsement; and verifiable proof of funds from all participants, and any securitized trust into which loan may have been placed such as the qualified trust

14
Verified Complaint

identified *Supra*.

98.     Plaintiff considers this a document of impropriety requiring rescission for rightful foreclosure to take place until actual purchase by relevant parties is verified.


**Defects found in Assignment #1**

99.     Plaintiff alleges that the following fatal defects exist within Assignment 1:

100.    The name of the signing party is stamped on the document in block letters.

101.    The document appears to be a standard form with "fill-in-the-blanks" for the names of the signors and entities.

102.    Any document signed by an officer of MERS states on its Website that: "Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution from MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

103.    The return address on Assignment 1is to a third party provider, DOCX.

104.    The document that purports to assign the DOT to the trust was signed <u>after</u> the cut-off date for the transfer of all such instruments to the trust pursuant to the PSA Agreement.

105.    The document that purports to assign the DOT to the trust was signed <u>after</u> the date for the acceptance of any final conveyance to the trust as provided for by the PSA Agreement.


**Robo-signing:**

106.    Linda Green, the Assistant Secretary of MERS as nominee for American Home Mortgage Acceptance, Inc.

107.    Nothing was found to show that Linda Green is actually an employee or a Vice President of MERS or

American Home Mortgage, either.

108.   A true and correct copy of said allegations is incorporated hereto as (RJN Exhibit B)

109.   Plaintiff, as noted above, has included an example of her "signature" on another document recorded in a different transaction.

110.   Linda Green of DOCX, a subsidiary of Lender Processing Services.

111.   LPS and DOCX are two of the most notorious foreclosure document mills that were uncovered by diligent auditors.

112.   Linda Green was the subject of an expose by NBC News in 2010.

113.   She is a well-known "Robo-signer", which is a person (or persons) who sign mortgage documents by the thousands with little or no knowledge of what the documents contain.

**Use of a Foreclosure Mill:**

114.   DOCX is the subject of many lawsuits and has been successfully litigated against by different state agencies, and been forced to settle many times for millions of dollars.

115.   Plaintiff alleges that Linda Green signs for MERS without disclosure of her employment by DBNT and not MERS.

116.   This is an indication that DBNT attempted to assign the DOT to itself without an Assignor. This position of unilateral transfer is further strengthened by the fact that here is no evidence of verified proof of funds; a note endorsement; a bill of sale; a declaration of value; or transfer taxes as having been paid to Contra Costa County, California "For Value Received".

117.   Execution of legal foreclosure documents by personnel who are not thoroughly acquainted with the file is fraudulent and prima facie evidence of robo-signing.

118.   The legal expectation is that a party receives its interest from its predecessor in interest; not its employee or paid agent who is not in title.

119. Plaintiff disputes the authenticity and authority to make Assignment 1.

120. A transferee cannot acquire rights if either the transferor or the transferee engaged in fraud or illegality.

121. The fraudulent Assignments suffer from many infirmities, both legal and factual. It should be cancelled from the Official Records of Contra Costa County.

122. Any and all interests which rely on this fraudulent and misrepresented document should likewise be cancelled, rescinded or voided as well.

**Assignment 2**

123. On May 17, 2012, a Second Assignment of the DOT was recorded in the Official Records for Contra Costa County bearing the instrument number 20120114853, purportedly with Defendant MERS transferring Interest within the DOT to DBNT as Trustee for the AMERICAN HOME MORTGAGE ASSETS TRUST 2007-5, MORTGAGE BACKED PASS-THROUGH CERTIFICATES, SERIES 2007-5.

124. A true and correct copy of said assignment is incorporated hereto as (RJN Exhibit C)

125. This document was signed by April King, as Assistant Secretary for MERS as nominee for American Home Mortgage Acceptance, Inc.

126. This marks the second time in four years that the above identified Beneficiary has attempted to assign all Beneficial Rights to this lien and property.

127. Through belief, there may be 20,000 or so <u>temporary</u> "deputized" officer's signing for MERS.

128. MERS does not have standing or authority under the DOT to assign anything. MERS can only assign what it owns, which is nothing.

**Defects found in Assignment #2**

129. Plaintiff alleges that the following fatal defects exist within Assignment 2:

130.    The name of the signing party is stamped on the document in block letters.

131.    The document appears to be a standard form with "fill-in-the-blanks" for the names of the signors and entities.

132.    Any document signed by an officer of MERS states on its Website that: "Employees of the servicer will be certifying officers of MERS. This means they are authorized to sign any necessary documents as an officer of MERS. The certifying officer is granted this power by a corporate resolution from MERS. In other words, the same individual that signs the documents for the servicer will continue to sign the documents, but now as an officer of MERS.

133.    The return address on the Assignment is to a third party provider, Power Default Services, Inc.

134.    The document purports to assign the DOT from the originator directly to the Trustee, thereby violating the Chain of Title as specified in the PSA.

135.    The document that purports to assign the mortgage or the deed of trust to the trust was signed after the cut-off date for the transfer of all such instruments to the trust pursuant to the PSA Agreement.

136.    The document that purports to assign the mortgage or the deed of trust to the trust was signed after the date for the acceptance of any final conveyance to the trust as provided for by the PSA Agreement.

137.    This is the second recorded Assignment by the same party, with two different Assignees. This indicates that the same Assignor is attempting to transfer beneficial rights twice on the same property.

138.    Execution of legal foreclosure documents by personnel who are not thoroughly acquainted with the file is fraudulent and prima facie evidence of robo-signing.

139.    The legal expectation is that a party receives its interest from its predecessor in interest; not its employee or paid agent who is not in title.

140.    Plaintiff disputes the authenticity and authority to make Assignment 2.

141.    A transferee cannot acquire rights if either the transferor or the transferee engaged in fraud or illegality.

142.    The fraudulent Assignments suffer from many infirmities, both legal and factual. It should be cancelled from the Official Records of Contra Costa County.

143.    Any and all interests which rely on this fraudulent and misrepresented document should likewise be cancelled, rescinded or voided as well.

**Notice of Default and Election to Sell 1**

144.    On May 17, 2012 at 9:26 a.m., a Notice of Default and Election to sell was recorded in the Official Records for Contra Costa County by Power Default Services, Inc., acting without any significant authority under the DOT, and is a notorious non-judicial foreclosure mill in California.

145.    The Trustee did not use 'due diligence' as required under California Civil Code § 2923.5.

146.    Furthermore, the individual who signed on the 'due diligence' is unknown as the signature is incomprehensible and is only signed with Vice President without any indication of who the individual is, or which company he or she works for.

147.    There was no substitution of Power Default Services, Inc. as foreclosure Trustee prior to the filing of the NOD.

148.    For these reasons, the NOD is invalid.

149.    A true and correct copy attached and incorporated hereto as (RJN Exhibit D).

**Substitution of Trustee**

150.    On May 17, 2012 at 9:26 a.m., a substitution of trustee was recorded in the Official Records for Contra Costa County by Power Default Services, Inc., with DBNT, acting as 'attorney in fact', assigning the trustee interest to Power Default Solutions, Inc.

151.    Recording the SOT at the same date and time as the NOD and NOTS is prima facia evidence of fraud.

152.   To add on top of the fraudulent NOD and SOT, April King, as noted in Fraudulent Assignment 2, executed the document, this time as Vice-President of DBNT.

153.   April King is therefore an Assistant Secretary of MERS as well as a Vice-President of DBNT.

154.   The audacity of any of the Defendants to justify such actions is disgusting

155.   As such April King should be investigated by both the FBI and DOJ for her role in this fraudulent scheme.

156.   A true and correct copy attached and incorporated hereto as (RJN Exhibit E).

## Recession of Notice of Default and Election to Sell 1

157.   On May 28, 2014, after no doubt discovering its blundering error in committing blatant fraud, Stephanie Spurlock, signing as 'Manager Trustee Services', rescinds the NOD which was recorded on May 17, 2012.

158.   A true and correct copy attached and incorporated hereto as (RJN Exhibit F).

## Notice of Default and Election to Sell 2

159.   On May 13, 2014, a Second Notice of Default and Election to sell was recorded in the Official Records for Contra Costa County by Power Default Services, Inc., acting on behalf of OCWEN Loan Servicing, who has nothing to do with the Subject Property.

160.   A true and correct copy is attached and incorporated hereto as (RJN Exhibit G).

161.   The Trustee did not use 'due diligence' as required under California Civil Code § 2923.5, despite claiming to.

162.   The 'due diligence' is signed by Matthew Owens, Contract Management Coordinator on January 21, 2014.

163.   The beneficiary identified in the NOD, DBNT was not assigned an interest under the DOT prior to

the filing of the NOD.

164.   For these reasons, the NOD is invalid. It should be cancelled. As a result, the non-judicial foreclosure should not proceeded and is wrongful. The Trustee's Sale should be rescinded.

**Notice of Default and Election to Sell 3**

165.   On September 25, 2014, a Third Notice of Default and Election to sell was recorded in the Official Records for Contra Costa County by Power Default Services, Inc., with <u>no beneficiary</u> identified.

166.   Plaintiff alleges that there is <u>no beneficiary</u> listed in the NOD3 and under the DOT due to the illegal, fraudulent and disgusting behavior of <u>all named Defendants.</u>

167.   A true and correct copy is attached and incorporated hereto as (RJN Exhibit H).

168.   The Trustee did not use 'due diligence' as required under <u>California Civil Code § 2923.5</u>.

169.   In fact, there is no Declaration of due diligence' as required under <u>California Civil Code § 2923.5.</u> included in the document

170.   For these reasons, the NOD is invalid. It should be cancelled. As a result, the non-judicial foreclosure should not proceeded and is wrongful. The Trustee's Sale should be rescinded.

**Defendants abandoned all interest in the Subject Property**

171.   As stated, *supra*, Plaintiff believe that the Originator, American Home Mortgage Acceptance, Inc. sold its interest in the Loan and was paid in full.

**The DOT does not secure the NOTE**

172.   Any assignment of a DOT without proper transfer of the obligation that it secures is a legal nullity.

173.   Plaintiff alleges the DOT was separated from the Note at least once, and remains separated, making the DOT unenforceable, null, deficient and illegal. *See Carpenter v. Longan, 83 U.S. 271 (1872)*, "The note

and mortgage are inseparable; … the mortgage can have no separate existence".

174.　Plaintiff alleges that the Loan was converted into a mortgage backed security and the NOTE and DOT were permanently severed.

175.　Plaintiff alleges that the Note and DOT were for many years owned by at least two separate entities.

176.　Plaintiff alleges the Loan was sold, turned into a security, pooled, and therefore the certificate holders may no longer claim that they are a real party in interest.

177.　Plaintiff alleges that a securitization did occur, and the Note cannot be re-attached to the DOT through adhesion.


**Assignment of Mortgage by MERS**

178.　MERS never held or owned the NOTE.

179.　Any assignment of a DOT without proper transfer of the obligation that it secures is a legal nullity. *See Carpenter v. Longan, 83 U.S. 271 (1872)*, "The note and mortgage are inseparable; … the mortgage can have no separate existence".

180.　MERS did not have standing or authority under the DOT to assign any interest in the DOT. MERS could only assign what it owned, which was nothing.

181.　To date, Plaintiff has yet to see any assignment to DBNT or the TRUST, rendering the illegal assignment void by law.


**VII.　DEFENDANTS LACK STANDING TO FORECLOSE THE SUBJECT PROPERTY**

182.　An actual controversy has arisen and now exists between Plaintiff and Defendants specified hereinabove, regarding their respective rights and duties, in that Plaintiff contends that Defendants do not have the right to foreclose on the Subject Property because Defendants have failed to perfect any security interest in the Subject Property.

183.   Thus, the purported power of sale by the above specified Defendants no longer applies.

184.   Plaintiff further contends that the above specified Defendants do not have the right to foreclose on the Subject Property because said Defendants did not properly comply with the terms of Defendants' own securitization requirements. The only individual who has standing to foreclose is the holder of the NOTE because they have a beneficial interest.

185.   The only potential holders of the Note are the certificate holders of the TRUST because they are the end users and pay taxes on their interest gains; furthermore, all of the banks and Defendants in the middle were paid in full and the certificate holders have suffered no financial loss.

186.   Plaintiff request that this Court find that the purported power of sale contained in the Note and DOT has no force and effect at this time, because Defendants' actions in the processing and handling of the loan involved numerous violations of State laws designed to protect borrowers.

187.   Plaintiff requests that title to the Subject Property remain in his name and deem that any attempted sale of the Property is "unlawful and void".

188.   In order to conduct a foreclosure action, a person or entity must have standing and that pursuant to California law, to perfect the transfer of mortgage paper as collateral, the owner should physically deliver the note to the transferee. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance or as unperfected. The Note identifies the entity to whom it was payable, the original lender. Therefore, the Note cannot be transferred unless it is endorsed; nor are there any other notices which establish that the original lender endorsed and sold the Note to another party.

189.   Plaintiff disputes the authenticity and authority of each and every endorsement that may have been made to the Note. A transferee cannot acquire rights if either the transferor or the transferee engaged in fraud or illegality, *See Supra*.

190.   Furthermore, insofar as the parties to the securitization of the Note and DOT base their claim that the Note was <u>legally</u> transferred and assigned to Defendant, DBNT, the Trustee of the TRUST, by a perfected

chain of title starting with the original lender, it is well established state law that the assignment of a DOT does not automatically assign the underlying promissory note and right to be paid and the security interest is incident of the debt.

191.    Pursuant to California law, to perfect the transfer of mortgage papers as collateral for a debt, the owner should physically deliver the note to the transferee. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance, or as unperfected. The Note specifically identifies the party to whom it was payable to and the Note, therefore, cannot be transferred unless it is endorsed.

192.    Defendants have not produced any evidence that the Note has been transferred via a perfected chain of title from the originator to DBNT to the Trustee for TRUST.

## VIII.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION - DECLARATORY JUDGMENT

193.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

194.    An actual controversy has arisen and now exists between Plaintiff and Defendants concerning their respective rights and duties regarding the Note and DOT.

195.    Defendants are intending upon foreclosing on the Subject Property in Dispute, which is the subject crux of this action.

196.    Plaintiff submits that this case meets the requirements under the Declaratory Judgment Act, 28 U.S.C. §2201, which, in relevant part states:

> [A] District court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action
> seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the
> declaratory judgment context, the normal principle that federal courts should adjudicate claims within
> their jurisdiction yields to considerations of practicality and wise judicial administration. *Wilton v.*

*Seven Falls Co., 515 U.S. 277, 289 (1995)*.

197.   In the case of *Grand Trunk W. R.R. Co. v. Consol. Rail Co., 746 F.2d 323 (6th Cir. 1984)*, the Sixth Circuit established five factors to guide a district court in exercising its discretion under the Declaratory Judgment Act:

> (1) Whether the declaratory action would settle the controversy;(2) Whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) Whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for *res judicata*;" (4) Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) Whether there is an alternative remedy which is better or more effective. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008) (citing *Grand Trunk*, 746 F.2d at 326).

198.   Plaintiff submits that this Complaint meets all the *Grand Trunk* factors, and that, therefore this Court has the authority and jurisdiction with which to issue a Declaratory Judgment.

199.   Plaintiff alleges that there is an actual "controversy" in the constitutional sense, with respect to Defendants' stated intention to foreclose.

200.   Plaintiff alleges that this court solely will be able to settle the issue,  with a declaratory judgment, and therefore Plaintiff hereby motions this Honorable Court, pursuant to Federal Rules of Civil Procedure 57 and 28 U.S.C. §2201, to issue an order, concurrently filed herewith, declaring the rights and duties of the parties involved in the instant case.

201.   The fact that a declaratory judgment may be granted "whether or not further relief is or could be prayed" indicates that declaratory relief is alternative or cumulative and not exclusive or extraordinary. A declaratory judgment is appropriate when it will "terminate the controversy" giving rise to the proceeding.

202.   The "controversy" must necessarily be "of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts. *Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 325, 56 S.Ct. 466,*

*473, 80 L.Ed. 688, 699 (1936).*

203.    The existence or nonexistence of any right, duty, power, liability, privilege, disability, or immunity or of any fact upon which such legal relations depend, or of a status, may be declared.

**WHEREFORE**, Plaintiff Pro Se prays this court enters a Declaratory Judgment [Count 1] determining the rights and duties of the parties involved in this lawsuit, and the impending foreclosure, for the following Declarations:

- That Defendant DBNT is the trustee of the securitized trust in the instant case and;

- That Defendant OCWEN is the servicer of Plaintiff's loan.

- That Defendant MERS is solely as a "nominee" for the lender as the beneficiary of the security interest Security Deed.

*204.*    If his court deems this Motion ungrantable or inappropriate, Plaintiff requests, in the alternative, that this court sua sponte, grant instead a declaration of rights as permitted under *Hasselbring v. Koepke, 263 Mich. 466, 248 N.W. 869, 93 A.L.R. 1170 (1933).*

205.    Plaintiff contends that Defendants do not have authority to foreclose upon and sell the Subject Property.

**Injunctive Relief is needed and warranted during the pendency of this action**

206.    Defendants are attempting to have the Subject Property auctioned, as noted *Supra.*

207.    Plaintiff has no other remedy at law to enforce his right to exclusive possession of the Subject Property.

208.    Such an event as the sale of the Subject Property would result in irreparable injury to Plaintiff, who would lose Subject Property along with considerable time, money and labor. For all the reasons stated, any sale of the Subject Property by Defendants should be enjoined. Plaintiff has no other plain, speedy, or adequate remedy, and the injunctive relief prayed for below is necessary and appropriate at this time. Without it, Plaintiff could suffer irreparable loss before this Court can make its determination as to the rights

and duties of the parties. Until Defendants are able to provide Plaintiff and this Court with written proof of its right to foreclose, this Court should enjoin the sale of the Subject Property by Defendants.

## SECOND CAUSE OF ACTION – QUIET TITLE

209.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

210.    Plaintiff is entitled to equitable relief by a judicial decree and order declaring Plaintiff to be the title owner of record of the Subject Property as to the effective date of said cancellation, and quieting the title therein and thereto subject only to such legitimate liens and encumbrances as the Court may deem void, and avoiding any liens or encumbrances upon the Subject Property created by Defendants or by their putative predecessors, or by any of them. Plaintiff has been damaged by the cloud of title of his property, making it difficult if not impossible to sell the Subject Property with title insurance. Plaintiff has proven the elements needed to quiet the Title in his name, and his name only.

211.    Plaintiff respectfully requests that this Honorable Court find in his favor and enter an Order to Quiet Title and final judgment that the Defendants and their successors and assigns be forever barred from asserting any rights, lien, title or interest in the Subject Property inconsistent with the interest or claims of the Plaintiff set forth in this Complaint and any other relief the Court deems appropriate.

212.    Defendants' interests in the Subject Property are junior, inferior and subordinate to the Plaintiff's superior interest in the Subject Property and should be quieted. Plaintiff desires and is entitled to a judicial declaration quieting title to the Subject Property in favor of the Plaintiff.

**WHEREFORE,** Plaintiff Pro Se prays this court enters a Quiet Title in Favor of Plaintiff [Count 2]

### THIRD CAUSE OF ACTION-

### VIOLATION OF CALIFORNIA CIVIL CODE § 2923.5

213.   Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

214.   Defendants did not use 'due diligence' to contact the Plaintiff 30 days prior to recording the NODs, as noted *Supra*. Plaintiff could have been contacted with only nominal effort and was fully available to meet with Defendant to explore foreclosure options.

215.   Plaintiff's attempts to contact Defendants were unanswered prior to recording any of the NODs. Defendants failed to evaluate Plaintiff's finances prior to recording the NODs. Defendants failed to give Plaintiff a HUD, (United States Department of Housing and Urban Development), telephone number prior to the recording of the NODs.

216.   Defendants failed to advise Plaintiff of his right to meet with Defendants to discuss foreclosure avoidance options prior to the recording of their NODs. Defendants did not comply with the requirements of California Civil Code § 2923.5 because Defendants did not contact Plaintiff prior to the date Defendants recorded the NODs.

*217.*   If California Civil Code § 2923.5 is not complied with, then there is no valid NOD, and without a valid NOD, a foreclosure sale cannot proceed. *Skov v. U.S. Bank, 143 Cal. Rptr. 3d 694, 700 (2012).*

218.   The available, existing remedy is found in the ability of a court in § 2924g, subdivision (c) (1) (A), to postpone the sale until there has been compliance with § 2923.5. Id.

219.   The legislature intended to allow a private right of action under § 2923.5. Id. at 701.

**WHEREFORE,** Plaintiff Pro Se prays this court enters an order postponing or cancelling the Non-judicial Trustee sale in Favor of Plaintiff [Count 3]

### FOURTH CAUSE OF ACTION - NEGLIGENCE PER SE

220.   Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though fully alleged and set forth herein.

221.   Defendants owed Plaintiff a duty to exercise reasonable care and skill to comply with the law in maintaining proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of the records. Defendants' actions and ongoing behavior are and have been in direct violation of federal and state statutes, rules and regulations and accordingly constitute negligence per se. In perpetrating the failures alleged above, and in failing to take the required actions as alleged above, the Defendants breached their duty of care and skill to Plaintiff in the servicing of the loan.

222.   Among other things, Defendants failed to properly and accurately notify Plaintiff about changes concerning the loan and its owners and failed to execute and file the proper documentation to transfer and sell the Note and assign its attendant DOT.

223.   As a direct and proximate result of the negligence and carelessness of the Defendants as set forth above, Plaintiff has suffered damages in an amount to be determined at trial.

224.   Because of Defendant's violation of federal and state statutes, rules and regulations, Plaintiff is also entitled to any remedy offered by those federal and state statutes, rules and regulations or case law interpreting those federal and state statutes, rules and regulations.

**WHEREFORE**, Plaintiff Pro Se prays this court enters a monetary judgment no less than $75,000.00 in statutory and punitive Damages in Favor of Plaintiff [Count 4]


### FIFTH CAUSE OF ACTION-

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

225.   Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though fully alleged and set forth herein.

29
Verified Complaint

226. Plaintiff alleges that at all times there existed an implied covenant of good faith and fair dealing requiring Defendants to safeguard, protect, or otherwise care for the assets and rights of Plaintiff. Said covenant prohibited Defendants from activities interfering with or contrary to the rights of Plaintiff.

227. Plaintiff alleges that the commencement of foreclosure proceedings upon the Subject Property without the production of documents demonstrating the <u>lawful rights</u> for the foreclosure constitutes a breach of the covenant.

228. Defendants breached the provisions of the DOT. Defendants also breached the provisions contained within the Note.

229. As a consequence and proximate result, Plaintiff has been damaged in a sum to be proven at trial.

**WHEREFORE,** Plaintiff Pro Se prays this court enters a monetary judgment no less than $75,000.00 in statutory and punitive Damages in Favor of Plaintiff [Count 5]

## SIXTH CAUSE OF ACTION-BREACH OF FIDUCIARY DUTY

230. Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though fully alleged and set forth herein.

231. MERS acted on behalf of a Defendant that was not beneficiary under the DOT. However, it presumed to accept said position. By so doing it also presumed, at least under general equitable principles of fair and honest dealings, to acquire a fiduciary duty toward the Plaintiff. Its actions have breached that duty. Its offenses set forth herein are therefore aggravated by its having violated the duties of the position of trust that it assumed.

**WHEREFORE,** Plaintiff Pro Se prays this court enters a monetary judgment no less than $75,000.00 in statutory and punitive Damages in Favor of Plaintiff [Count 6]

## SEVENTH CAUSE OF ACTION-WRONGFUL FORECLOSURE

232. Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though fully alleged and set forth herein.

233. Through belief, Defendants violated California law, which requires them to contact the borrower in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.

234. Defendants are required at law to use due diligence to contact the borrower.

235. Accordingly, all Defendants involved in the foreclosure have failed to fulfill their legal obligation to Plaintiff. Thus, the Defendants have engaged in an unlawful foreclosure of the Subject Property. They lack the legal authority to foreclose but are proceeding against Plaintiff anyway. If any of them could prove their respective legal authority, they nonetheless have failed to comply with California law.

236. Plaintiff further alleges that the Note was sold or transferred without notifying Plaintiff in writing. Therefore, Defendants have no legal right to enforce it.

237. Defendants never had the legal authority to foreclose, because the DOT was assigned improperly, if at all. Therefore, the DOT could not provide a basis for a foreclosure, and the foreclosure is void. The DOT contains language which forms a condition precedent to commencing a foreclosure. Defendants failed to satisfy the condition precedent required by the DOT. Defendants in this case had a duty, to Plaintiff and to the broader community, to follow the law, including but not limited to the statutes governing foreclosure and the language of the DOT.

238. **WHEREFORE,** Plaintiff Pro Se prays this court enters a monetary judgment in an amount to be determined at trial and punitive Damages in Favor of Plaintiff [Count 7]

## EIGHTH CAUSE OF ACTION-VIOLATION OF
## THE REAL ESTATE SETTLEMENT PROCEDURES ACT

239. Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding

paragraphs as though fully alleged and set forth herein.

240.    As mortgage lenders, OCWEN and DBNT are subject to the provisions of the Real Estate Settlement Procedures Act, ("RESPA"), 12 USC §2601 ET. seq.

241.    In violation of 12 USC §2607 and in connection with the mortgage loan to Plaintiff, Defendants accepted charges for the rendering of real estate services which were in fact charges for other than services actually performed.

242.    As a result of the Defendants violations of RESPA, Defendants are liable to Plaintiff in an amount equal to three (3) times the amount of charges paid by Plaintiff for "settlement services" pursuant to 12 USC §2607 (d) (2).

243.    Plaintiff first learned of the actions of Defendants, including their failure to disclose and the fraud committed upon him on April 1, 2015. Any applicable statute of limitations should run from this date.

**WHEREFORE,** Plaintiff Pro Se prays this court enters a monetary judgment in an amount to be determined at trial and punitive Damages in Favor of Plaintiff [Count 8]

## NINTH CAUSE OF ACTION- FRAUD IN THE CONCEALMENT

244.    Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though fully alleged and set forth herein.

245.    Defendants concealed the fact that the Loans were securitized as well as the terms of the Securitization Agreements, including, *inter alia:* (1) Financial Incentives paid; (2) existence of Credit Enhancement Agreements, and (3) existence of Acquisition Provisions.

246.    By concealing the securitization, Defendants concealed the fact that Plaintiff's loan changed in character inasmuch as no single party would hold the Note but rather the Notes would be included in a pool with other notes, split into tranches, and multiple investors would effectively buy shares of the income stream from the loans.

Verified Complaint

247. Changing the character of the loan in this way had a materially negative effect on Plaintiff which was known by Defendant but not disclosed.

248. Defendants knew or should have known that had the truth been disclosed, Plaintiff would not have entered into the Loans. Defendants intended to induce Plaintiff based on these misrepresentations and improper disclosures. Plaintiff's reasonable reliance upon the misrepresentations was detrimental. But for failure to disclose the true and material terms of the transaction, Plaintiff could have been alerted to issues of concern. Plaintiff would have known of Defendants true intentions and profits from the proposed risky loan. Plaintiff would have known that the actions of Defendant would have an adverse effect on the value of Plaintiff's home.

249. Defendants' failure to disclose the material terms of the transaction induced Plaintiff to enter into the loans and accept the Services as alleged herein. Defendants were aware of the misrepresentations and profited from them.

250. As a direct and proximate result of the misrepresentations and concealment Plaintiff was damaged in an amount to be proven at trial, including but not limited to costs of Loan, damage to Plaintiff's financial security, emotional distress, and Plaintiff has incurred costs and attorney's fees. Defendants are guilty of malice, fraud and oppression. Defendants' actions were malicious and done willfully in conscious disregard of the rights and safety of Plaintiff in that the actions were calculated to injure Plaintiff. As such Plaintiff is entitled to recover, in addition to actual damages, punitive damages to punish Defendants and to deter them from engaging in future misconduct.

**WHEREFORE**, Plaintiff Pro Se prays this court enters a monetary judgment in an amount to be determined at trial and punitive Damages in Favor of Plaintiff [Count 9]

33
Verified Complaint

**TENTH CAUSE OF ACTION- SLANDER OF TITLE**

251.  Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though fully alleged and set forth herein.

252.  Defendants, and each of them, disparaged Plaintiff's exclusive valid title by and through the preparing, posting, publishing, and recording of the documents previously described herein, including, but not limited to, the Notice of Default, Notice of Trustee's Sale, and the documents evidencing the commencement of a non-judicial foreclosure by a party who does not possess that right.

253.  Defendants knew or should have known that such documents were improper in that at the time of the execution and delivery of said documents. Defendants had no right, title, or interest in the Property. These documents were naturally and commonly to be interpreted as denying, disparaging, and casting doubt upon Plaintiff's legal title to the Property.

254.  By posting, publishing, and recording said documents, Defendants' disparagement of Plaintiff's legal title was made to the world at large. As a direct and proximate result of Defendants' conduct in publishing these documents, Plaintiff's title to the Property has been disparaged and slandered, and there is a cloud on Plaintiff's title, and Plaintiff has suffered, and continues to suffer, damages in an amount to be proved at trial.

255.  As a further proximate result of Defendants' conduct, Plaintiff has incurred expenses in order to clear title to the Property.

256.  Moreover, these expenses are continuing, and Plaintiff will incur additional charges for such purpose until the cloud on Plaintiff's title to the property has been removed. The amounts of future expenses and damages are not ascertainable at this time.

257.  As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered humiliation, mental anguish, anxiety, depression, and emotional and physical distress, resulting in the loss of sleep and other injuries to his health and well-being, and continues to suffer such injuries on an ongoing basis.

258.  The amount of such damages shall be proven at trial.

259.     At the time that the false and disparaging documents were created and published by the Defendants, Defendants knew the documents were false and created and published them with the malicious intent to injure Plaintiff and deprive him of his exclusive right, title, and interest in the Property, and to obtain the Property for their own use by unlawful means.

260.     The conduct of the Defendants in publishing the documents described above was fraudulent, oppressive, and malicious.

261.     Therefore, Plaintiff is entitled to an award of punitive damages in an amount sufficient to punish Defendants for their malicious conduct and deter such misconduct in the future.

**WHEREFORE,** Plaintiff Pro Se prays this court enters a monetary judgment in an amount to be determined at trial and punitive Damages in Favor of Plaintiff [Count 10]

**WHEREFORE,** Plaintiff prays this court to enter judgment against Defendants on all counts, as follows:

1.  For Compensatory Damages in an amount to be determined by proof at trial;

2.  For Special Damages in an amount to be determined by proof at trial;

3.  For General Damages in an amount to be determined by proof at trial;

4.  For Punitive Damages as allowed by law;

5.  For Restitution as allowed by law;

6.  For Attorney's Fees and Costs of this action;

7.  For a judgment forever enjoining each of the Defendants from claiming any estate, right, title or interest in the Subject Property;

8.  For such other further relief as the court may deem just and proper.

Verified Complaint

Dated: ___8/28___, 2015.

Respectfully Submitted,

Saviour Azzopardi, Plaintiff Pro Se
4551 Driftwood Ct.
Discovery Bay, CA 94514
Email: Kathy.azzopardi@gmail.com

Verified Complaint

<u>**VERIFICATION**</u>

I, the undersigned Plaintiff, do solemnly swear; declare under penalty of perjury of the laws of California and of the United States and state as follows:

To the best of my personal knowledge and belief, all the facts within this Complaint are true and correct.

FURTHER, THE AFFIANT SAYETH NAUGHT

IN WITNESS WHEREOF, I hereunto set my hand and my seal, and hereby certify all the statements made above are true, correct and complete.

DATED _5/28_____, 2015.


Saviour Azzopardi, Plaintiff Pro Se
4551 Driftwood Ct.
Discovery Bay, CA 94514
Email: Kathy.azzopardi@gmail.com